IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| KIMBERLY DAWN LOCKWOOD, ) | |
|     Plaintiff, ) | |
| ) | Civil Action No. 3:22-cv-00496 |
| v. ) | Judge Campbell/Frensley |
| ) | |
| WILLIAMSON COUNTY SCHOOLS., ) | |
|     Defendant. ) | |

# REPORT & RECOMMENDATION

Pending before the Court is Defendant's Motion to Dismiss. Docket No. 5. Defendant also filed a Memorandum of Law in Support of Defendant's Motion to Dismiss. Docket No. 6. Plaintiff subsequently filed a document stylized as a "Civil Summons Request" (Docket No. 11) which the Court has since denied (Docket No. 18). Plaintiff has also filed several additional documents and letters with the Court (Docket Nos. 10, 13-16, 19-20) which contain additional factual allegations, as well as photos and screenshots allegedly documenting her claims which the Court will treat as her response to the motion.

For the reasons stated below, the undersigned recommends that Defendant's Motion (Docket No. 5) be **GRANTED** and that Plaintiff's federal claims under the Fourth Amendment, the Ninth Amendment, the Fourteenth Amendment, HIPAA, and FERPA be **DISMISSED**, and that Plaintiff's claim under the ADA be **DISMISSED WITHOUT PREJUDICE** to re-filing after Plaintiff has exhausted administrative remedies. Accordingly, the undersigned further recommends that the court decline to extend supplemental jurisdiction and that Plaintiff's state law claims be **DISMISSED WITHOUT PREJUDICE** to filing in state court.

# I. INTRODUCTION & BACKGROUND

On June 29, 2022, Plaintiff, who is proceeding pro se in this matter, filed a Complaint (Docket No. 1) alleging employment discrimination, federal constitutional violations under the Fourth, Ninth, and Fourteenth Amendments, as well as state constitutional and statutory violations. Docket No. 1-1, p. 1. Plaintiff also alleges that Defendant and its employees violated the Memorandum of Understanding ("MOU") between the Williamson County Board of Education and the Williamson County Education Association (Docket No. 6-1). Docket No. 1-1, p. 1. Plaintiff also alleges violations of the Health Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C. §1302d-9, and the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. §1232g. *Id.* Plaintiff asserts that the discriminatory behavior of which she complains includes "illegal use of work-placed [*sic*] technology to violate privacy rights including health status." Docket No. 1, p. 4. Additionally, although Plaintiff did not check the box in the Basis for Jurisdiction section for the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§12112, in the Statement of Claim section Plaintiff checked the box marked "disability or perceived disability" as the alleged reason Defendant discriminated against her. *Id.* at 3-4. Thus, it appears Plaintiff also intends to bring a claim of discrimination under the ADA.

Plaintiff has also filed several additional documents with the Court, which include a mix of factual allegations and asserted legal conclusions, as well as photos and screenshots that Plaintiff asserts depict the alleged events and behavior. *See generally* Docket Nos. 10, 13-15. In Plaintiff's first Notice (Docket No. 10) she alleges that Williamson County Schools ("WCS") faculty members "have admitted that what [Plaintiff] previously submitted to the court was true." *Id.* at 1. Plaintiff alleges,

> In the School year (2021-2022) I said to Derek Desantis one day as things that happened in my home were repeated back to me – and I figured out some of

what was going on- I said to him- Why would you guys do this to me? Who thought all of this was a good idea? ? He said yeah- I really don't know- and just shook his head. So he confirmed it then and on several other occasions [*sic*] as well. / So did Suzanne Lange another teacher

*Id.*

Plaintiff alleges that the "same thing happened" when she spoke with two substitute teachers during hall duty. *Id.* Plaintiff further alleges that at least three students confirmed that Defendant gave students "free merch," such as t-shirts, and other "bonuses" in exchange for "com[ing] in and giv[ing] [Plaintiff] a hard time." *Id.*

The most concise listing of Plaintiff's other factual claims appears in the Notice filed on August 18, 2022, (Docket No. 13) where Plaintiff writes:

Let's start w/ the facts

(1) Professional people have admitted that they broke federal law & were coached on how to make my work environment unsafe and hostile

(2) Underage people have told me that they were given free merchandise and other perks to make my life miserable

(3) My mom said that she let "them" go through my things when I was not here and someone hired a private investigator to help make my life miserable

(4) People have been in and out of my houses (breaking and entering) for no telling how long – and @ how many properties
Items sold @ yard sale from years ago or thrown away ended back up on my property

(5) Drugs & alcohol that were not mine & not purchased by me ended up in my house in June 2022

(6) Someone broke in my house in June 2022 – left dead animals in my yard / moved my patio furniture around

(7) My cars have been tampered with/my technology has been tampered with – I reported all of this as early as 2021 – received no assistance

(8) Someone planted purple flowers in my yard & left bag of seeds in my yard

3

(9) Oftentimes when I mow the yard there are different plants / so it is safe to say – that other things have been tampered with on my farm without permission/consent

(10) I have paid for services that are federally mandated that I did not receive / cellphones have been tampered with

(11) Things brough up in therapy sessions were brought back up to me @ my workplace (HIPPA [*sic*] violation)

(12) My CPA filed my taxes incorrectly for 3 years & refused to correct all of the issues

(13) Multiple flat tires over the past several years

(14) 3 mailboxes destroyed (federal) – 2 @ Peytonsville, 1 @ Burnley

(15) I was made insane or suicidal (2021) because I was humiliated over and over again by information gathered by or through illegal means

(16) None of my possessions / properties have been secure
So # of laws broken so far
Breaking & entering
Leaving Illegal substances on property
HIPPA [*sic*], EEOC violations
Federal offenses – mailboxes, phones, computers

(17) I was run out my house in the summer of 2021 due to harassment (Refer to extensions listed under google pages)

(18) Someone threw a piece of wood at me on the interstate / Trying to clean or rewire things that have/had been altered – almost electrocuted – so now we can add attempted murder to the list of laws broken

All I can tell you is what I witnessed or what has been told to me

Mr. Reed said this was about my dad – well – let's talk about it I have <u>nothing</u> to hide

My mom said she only talked to the school system once about me – however since she has been lying to me for so long – color me skeptical

Underage people turned in work that where they couldn't even pronounce the words / there are the same people that were given "free merch" / papers & emails read like my autobiography – once again admitted to by the same people (professional)

4

That was it – It was about the teaching and the paperwork – Nothing else.

Docket No. 13, pp. 1-4

The later pages of this filing include photographs from inside and around Plaintiff's home, including images of household goods, a door handle, and Plaintiff's yard. *Id.* at 5-7. Plaintiff captions these photos as evidence of the home invasions she alleges occurred in June of 2022. *Id.* Plaintiff also includes a screenshot from her computer with handwritten annotations labeling the depicted links as "sound effects through google" and "extensions placed on my computer & around my farm w/o permission." *Id.* at 8.

The timeline for Plaintiff's employment discrimination allegations is somewhat unclear. On April 28, 2022, Defendant sent Plaintiff a letter notifying her that she was being suspended without pay, effective immediately and continuing until "the completion of an investigation into allegations of incompetence and inefficiency in performing [Plaintiff's] job as a teacher at Centennial High School." Docket No. 15, p. 13. On August 15, 2022, Defendant notified Plaintiff that she could use her sick leave balance during her suspension until the investigation was completed or her sick leave was exhausted, whichever came first. *Id.* at 20. It appears that between these dates, Defendant agreed to reinstate Plaintiff with backpay, conditional on Plaintiff submitting to a fitness-for-duty examination, at Defendant's expense. *Id.* at 27. This undated letter from Defendant's counsel references that Plaintiff "would begin using her sick days on August 1, 2022," so it appears the reinstatement decision was made sometime prior to this date. *Id.* Aside from these filings, Plaintiff provides little information about the investigation into her workplace performance and few concrete descriptions or corresponding dates for the alleged harassment and hostile behavior by her students and coworkers.

Plaintiff's allegations of technological hacking and invasion of privacy seem to span a

5

larger, even foggier timeline. Plaintiff claims she was "run out of [her] house in the summer of 2021 due to harassment," and references as support a list of Google extensions allegedly "placed on [her] computer and around [her] farm" without permission. Docket No. 13, pp. 3, 8. On January 19, 2022, Plaintiff sent an email to two of Defendant's employees requesting assistance because she discovered that her Facebook account, which she stated she had not used in months, had been compromised, and expressing confusion that she had "been logged in to [her] Google account / now linked with [her] Google WCS account (24/7) for the past 28 days." Docket No. 15, p. 19. Plaintiff alleges that when she notified WCS administration about this issue, "Parker Altman told [her] that [she] had probably opened it and forgot." *Id.*, p. 23. Plaintiff additionally asserts that several months later, on July 14, 2022, she was "unable to have legitimate contact" with the Equal Opportunity Employment Commission ("EEOC") during a scheduled meeting, "due to internet hacking and privacy issues." Docket No. 16, p. 1.

Finally, the "health status" information Plaintiff claims that Defendant shared appears to refer to information discussed during appointments with a psychiatrist. Docket No. 1, p. 4; Docket No. 15, p. 9. Plaintiff states, "[t]he treatment and/or fitness for duty exam that WCS requested just happens to be at the facility where the psychiatrist that I was seeing (Dr. William Bryan Bell) recommended treatment in May of 2022." Docket No. 15, p. 9. Next to Dr. Bell's name, Plaintiff annotates, "Dr. who violated HIPPA [*sic*] & completed false medical documents." *Id.* Plaintiff has not named Dr. Bell as a party to this lawsuit, and it is not clear how, or if, Plaintiff asserts that Dr. Bell's alleged HIPAA violations are related to Plaintiff's claims against Defendant.

Defendant's Motion (Docket No. 5) asserts that Plaintiff's Complaint should be dismissed pursuant to Rule 12 of the Federal Rules of Civil Procedure because "Plaintiff's allegations are insufficient to state a claim against Defendant" on all counts. Docket No. 6, pp. 1-2. Defendant

asserts that Plaintiff's Complaint (Docket No. 1) "is made up almost exclusively of conclusory allegations that Defendant and its employees acted maliciously and illegally towards Plaintiff," and that Plaintiff "has failed to state any claim upon which relief could be granted even under the more lenient standards afforded to pro se litigants." Docket No. 6, p. 3. Plaintiff has not directly responded to Defendant's argument but has continued to file additional information with the Court. *See* Docket Nos. 10, 13-16, 19-20.

## II. STANDARD OF REVIEW

In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), courts will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). Courts must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

However, the complaint's allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "threadbare recitals of the elements of a cause of action," but rather must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556. According to the Supreme Court, "plausibility" occupies the wide space between "possibility" and "probability." *Iqbal*, 556 U.S. at 678. Any claim for relief must contain "a short

and plain statement of the claim showing that a pleader is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the...claim is and the grounds upon which it rests.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

Pleadings and documents filed by pro se litigants are to be "liberally construed," and a "pro se complaint, however inartfully pleaded, must be held to a less stringent standard than formal pleadings drafted by lawyers." *Erickson,* 551 U.S. at 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Additionally, courts will consider documents filed after the complaint "as part of the pleadings" on a motion to dismiss. *Brown v Matauszak*, 415 F. App'x 608, 613 (6th Cir. 1975) (quoting *Flournoy v. Seiter*, No. 98–3535, 1987 WL 24129 (6th Cir. Dec. 7, 1987)). However, "the lenient treatment generally accorded to pro se litigants has limits." *Pilgrim v. Littlefield*, 92 F. 3d 413, 416 (6th Cir. 1996) (citing *Jourdan v. Jabe*, 951 F. 2d 108, 110 (6th Cir. 1991)). District Courts "have no obligation to act as counsel or paralegal" to pro se litigants. *Pliler v. Ford*, 542 U.S. 22, 231 (2004). District Courts are also not "required to create" a pro se litigant's claim for him. *Payne v. Sec'y of Treasury*, 73 F. App'x 836, 837 (6th Cir. 2003).

### III. LAW & ANALYSIS

Defendant asserts that Plaintiff's Complaint should be dismissed pursuant to Rule 12 of the Federal Rules of Civil Procedure because "Plaintiff's allegations are insufficient to state a claim against Defendant." Docket No. 6, pp. 1-2. Defendant contends that "Plaintiff has failed to state any claim upon which relief could be granted even under the more lenient standards afforded to pro se litigants." *Id.* at 3. Defendant asserts that "[t]he Complaint is made up almost exclusively of conclusory allegations that Defendant and its employees acted maliciously and illegally towards Plaintiff." *Id.* Defendant asserts that Plaintiff fails to give Defendant fair notice of what her claim is and the grounds upon which it rests, and additionally fails to state a "claim to relief that is

8

plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 555).

Defendant "acknowledges that because Plaintiff is proceeding pro se, the Court would ordinarily give Plaintiff an opportunity to cure deficiencies in the Complaint prior to dismissal," but asserts that the Complaint (Docket No. 1) could not be cured by amendment. Docket No. 6, p. 4. The Sixth Circuit has recognized that other circuits require district courts to permit plaintiffs to file a curative amendment, even if the plaintiff has not sought leave to amend. *Brown*, 415 F. App'x at 615. However, "[t]here is currently no rule of law in this circuit that requires the district court to give *sua sponte* a *pro se* plaintiff leave to amend his complaint absent a request," and the Sixth Circuit has declined to impose such a standard. *Berndt v. State of Tenn.*, 796 F. 2d 879, 882 (6th Cir. 1986). Plaintiff has not requested leave to amend her Complaint (Docket No. 1), and the undersigned does not see any compelling reason to grant leave to amend *sua sponte* in this case. Therefore, the undersigned will address each claim on the merits based on the face of the complaint and will consider information presented in Plaintiff's additional filings where appropriate. *See Brown,* 415 F. App'x at 613.

### A.     **Fourth Amendment Claims**

Defendant asserts that Plaintiff's claims, if fleshed out, would not support any cause of action under the Fourth Amendment. Docket No. 6, p. 5. Defendant interprets Plaintiff's Fourth Amendment claim as alleging one of two scenarios, either that one of Defendant's employees looked at Plaintiff's personal information on a device owned by Defendant (such as personal emails sent or viewed on her work computer), or that one of Defendant's employees accessed her personal information (such as her personnel file) on a device or network owned by Defendant. *Id.* Defendant asserts that neither scenario supports a Fourth Amendment claim. *Id.* As for the first scenario, Defendant asserts that "Plaintiff had no reasonable expectation of privacy regarding any

personal information stored or accessed on an employer-issued device." *Id.* And as for the latter scenario, Defendant argues that "any records concerning Plaintiff produced and maintained by Defendant belong to Defendant, and Plaintiff has no right to prevent Defendant or its employees from accessing Defendant's own records." *Id.*

It is unclear whether the screenshots of Plaintiff's devices, which she alleges indicate unauthorized use of her accounts, were taken from personal electronic devices or devices issued by Defendant. *See, e.g.*, Docket No. 15, pp. 19, 23; Docket No. 13, p. 8; Docket No. 16, p. 8. However, it does appear that Plaintiff is alleging that at least some of her personal devices and accounts were hacked in some capacity. Plaintiff claims she was "run out of [her] house in the summer of 2021 due to harassment." Docket No. 13, p. 3. Plaintiff clarifies that she is referring to the Google extensions which she alleges were placed in and around her home without permission. *Id.*; *see id.* at 8. Thus, it appears at least some of the alleged interference with Plaintiff's technology refers to personal electronic devices, networks, and internet accounts. Plaintiff alleges that apps she did not download appeared on her devices, that her accounts displayed records of log-ins and account use that were not attributable to Plaintiff's own activity. Docket No. 15, pp. 19, 23. However, none of Plaintiff's factual allegations are sufficient to support a plausible inference that Defendant or one of its employees is responsible for this activity. *See Iqbal*, 556 U.S. at 678.

Plaintiff also appears to allege a violation of the Fourth Amendment provision prohibiting unlawful search and seizure. In several of Plaintiff's supplemental Notices, she mentions "search and seizure" as one of the alleged wrongs she has suffered. *See* Docket No. 15, p.1; Docket No. 16, p. 2. Plaintiff submitted many photos of her home and yard with captions indicating that she believed many of the pictured items had been left in her home by someone else. *See* Docket No. 13, pp. 2-3. Additionally, Plaintiff alleges that her mother admitted that she "let 'them' go through

[Plaintiff's] things." Docket No. 13, p. 1. Plaintiff states that she "is assuming it was a WCS representative," that her mother was referring to, "since the information ended back in [Plaintiff's] workplace." Docket No. 15, p. 6. Plaintiff's "search and seizure" claim thus appears to refer to the allegation that Plaintiff's mother allowed some of Defendant's employees to enter Plaintiff's home and investigate her belongings. *See id.* at 1-2.

These allegations are also insufficient to support a claim under the Fourth Amendment. The facts Plaintiff presents do not sufficiently support her self-described assumption that Defendant sent some of its employees to search her home such that the Court may reasonably infer that Defendant is liable. *See Iqbal*, 556 U.S. at 678. Furthermore, the "Fourth Amendment proscribes only governmental action and does not apply to a search or seizure, even an unreasonable one, conducted by a private individual not acting as an agent of the government or with the participation or knowledge of any governmental official*." U.S. v. Lambert*, 771 F.2d 83, 89 (6th Cir. 1985). Plaintiff has not asserted that one or more of Defendant's employees searched Plaintiff's home "as an agent of the government or with the participation or knowledge of any governmental official." *Id.* Accordingly, the undersigned finds that Plaintiff has failed to state claim upon which relief can be granted and recommends that Plaintiff's claim asserting violation of the Fourth Amendment be DISMISSED in accordance with Fed. R. Civ. P. 12(b)(6).

B.  **Ninth Amendment Claim**

Defendant asserts that the Ninth Amendment does not convey any substantive rights, and that Plaintiff therefore cannot assert a cause of action under the Ninth Amendment. Docket No. 6, p. 6. Indeed, the Sixth Circuit has clarified that the Ninth Amendment "does not confer substantive rights in addition to those conferred by other portions of our governing law." *Gibson v. Matthews*, 926 F. 2d 532, 537 (6th Cir. 1991) Rather, the Ninth Amendment "was added to the Bill of Rights

11

Case 3:22-cv-00496   Document 21   Filed 12/16/22   Page 11 of 18 PageID #: 350

to ensure that the maxim *expressio unius est exclusio alterius* would not be used at a later time to deny fundamental rights merely because they were not specifically enumerated in the Constitution." *Id.* (quoting *Charles v. Brown*, 495 F. Supp. 862, 863-64 (N.D. Ala. 1980)). Accordingly, the undersigned finds that Plaintiff has failed to state a claim upon which relief can be granted and recommends that Plaintiff's Ninth Amendment claim be DISMISSED.

### C. Fourteenth Amendment Claim

Plaintiff alleges that "Defendant and its employees acted wreckless [*sic*] in addressing the Plaintiff's concerns…denying the Plaintiff relief in numerous areas including the right to due process." Docket No. 1-1, p. 2. It is somewhat unclear from Plaintiff's Complaint (Docket No. 1) what events Plaintiff alleges amounted to a denial of due process. Defendant asserts that "[i]f Plaintiff is alleging that her procedural due process rights were violated because the process she was given in the past did not result in a desired outcome" then she has no valid claim, because "the right to procedural due process does not include the right to a desired outcome." Docket No. 6, pp. 6-7 (citing *Ching v. Mayorkas*, 725 F.3d 1149, 1156 (9th Cir. 2013)). Defendant also argues that if Plaintiff is alleging a violation of due process "in any ongoing proceeding (perhaps in relation to her suspension), such allegations are unripe." *Id.* at 7 (citing *Texas v. United States*, 523 U.S. 296, 300 (1998)).

Plaintiff's October 25, 2022, Notice (Docket No. 19) clarifies that Plaintiff's due process allegations concern her suspension from employment on April 28, 2022. *See* Docket No. 19, pp. 1-3. Plaintiff asserts that she "was not provided with any evidence" supporting Defendant's decision to suspend her "until weeks after the suspension." *Id.* at 2. Plaintiff asserts that she had received a favorable evaluation in fall of 2021 and had no reason to believe that she was performing unsatisfactory work. *Id.* Plaintiff further alleges that "the district has no policies concerning

acceptable teaching methods." *Id.* However, Plaintiff admits that in March of 2022 she met with WCS administrators and her union representative to discuss WCS administration's concerns regarding two issues: first, Plaintiff's "high failure rate," which Plaintiff attributes to factors such as class size and attendance issues; second, student and parent complaints that Plaintiff's gradebook was not kept up to date. *Id.* at 2-3. Plaintiff asserts that she "was not provided any written documentation of these concerns," nor was she given "deadlines or any type of criteria…for a plan for improvement." *Id.* at 3.

The WCS Memorandum of Understanding ("MOU") (Docket No. 6-1) states that WCS educators may face disciplinary action, including suspension, for "insubordination, unprofessional conduct, incompetence, inefficiency, conduct unbecoming to a member of the teaching profession, and/or neglect of duty." Docket No. 6-1, p. 26. The MOU states that "[a]n investigation of the actions which may be the basis for discipline shall be conducted and shall include a conference with the educator prior to any implementation of discipline, except that the Superintendent of Schools may suspend an educator at any time that may seem necessary, pending investigation as described in T.C.A. §49-5-511." *Id.* The MOU also states that "[t]he educator shall be given at least 24 hours' notice of said conference, and the educator shall have the right to have an Association representative or a personal attorney present during said conference." *Id.* "An educator who disagrees with the allegations presented may respond in writing within two (2) days of that conference." *Id.* at 27. Finally, "[a]fter investigation and the opportunity to respond, the supervisor shall give the educator notice of what discipline, if any, will be administered." *Id.*

Based on Plaintiff's allegations concerning the events that led to her suspension, the undersigned finds that Plaintiff has not plead sufficient factual content to state a plausible claim that Defendant is liable to Plaintiff under the Fourteenth Amendment for denial of due process.

*See Iqbal,* 556 U.S. at 678. Rather, Plaintiff's evidence appears to confirm that Defendant adhered to the procedures required by the MOU and by T.C.A. §49-5-511. Accordingly, the undersigned recommends that Plaintiff's Fourteenth Amendment claim be DISMISSED.

### D. HIPAA Claim

Plaintiff claims that "Defendant and its employees purposefully shared and disseminated throughout the community personal information about the Plaintiff causing the Plaintiff to be discriminated against due to violations of [HIPAA]." Docket No.1-1, p.1. However, as Defendant points out, HIPAA "doesn't authorize a private cause of action." *Faber v. Ciox Health, LLC*, 944 F.3d 593, 596 (6th Cir. 2019). Additionally, the "covered entit[ies]" subject to HIPAA's regulations are limited to health plans, health care clearinghouses, and health care providers who "transmit any health information in electronic form in connection with a transaction covered by this subchapter." 45 C.F.R. 160.103. As Defendant is not a "covered entity" and therefore not subject to HIPAA's requirements, the undersigned finds that Plaintiff has failed to state a claim upon which relief can be granted. *See id.* Accordingly, the undersigned recommends that Plaintiff's HIPAA claim be DISMISSED.

### E. FERPA Claim

Plaintiff claims that Defendant shared and disseminated her personal information and that these acts were "violations of…FERPA." Docket No. 1-1, p.1. FERPA, which governs access to student educational records, states that

> [t]he term "education records does not include… in the case of persons who are employed by an educational agency or institution but who are not in attendance at such agency or institution, records made and maintained in the normal course of business which relate exclusively to such person in that person's capacity as an employee and are not available for use for any other purpose.

20 USC 1232g(a)(4)(B)(iii).

Because Plaintiff is a teacher, her records are not protected by FERPA. *See Klein Independent Sch. Dist. v. Mattox*, 830 F.2d 576, 579 (5th Cir. 1987) ("Because she is an employee and not a student…she does not fall within that class of people for whose benefit FERPA was created.") Furthermore, like HIPAA, FERPA does not create a privately enforceable right of action. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 287 (2002) ("[There is no question that FERPA's nondisclosure provisions fail to confer enforceable rights."). Accordingly, the undersigned finds that Plaintiff has not stated a claim upon which relief can be granted under FERPA and accordingly recommends that Plaintiff's claim be DISMISSED.

### F. ADA Claim

It appears that Plaintiff also intends to raise a claim under the ADA, as she alleges that Defendant discriminated against her based on "mental/physical disability." Docket No. 1, pp. 3-4. Defendant asserts that, if Plaintiff is trying to raise such a claim, it should be dismissed for failure to exhaust available administrative remedies. Docket No. 6, p. 8. Plaintiff's Complaint indicates that the Equal Opportunity Employment Commission ("EEOC") had not, at the time of filing, issued her a Notice of Right to Sue Letter. Docket No. 1, p. 5. Plaintiff attached to her Complaint (Docket No. 1) a scheduling confirmation indicating that she had made an appointment with the EEOC for July 14, 2022. Docket No. 1-1, p. 3.

However, "[a]n employee may not file a suit under the ADA if he or she does not possess a right-to-sue letter from the EEOC because he or she has not exhausted his or her remedies." *Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299, 309 (6th Cir. 2000). "To exhaust administrative remedies, a plaintiff must file an EEOC charge within 180 days of the alleged unlawful employment practice or, if the plaintiff has instituted proceedings with a state or local

agency, within 300 days." *Williams v. Northwest Airlines, Inc.*, 53 F. App'x 350, 351 (6th Cir. 2002). Plaintiff was initially suspended from employment at WCS on April 28, 2022. Docket No. 15, p. 13. Plaintiff has not alleged that she has filed a charge with the EEOC or that she has commenced proceedings with any state or local agency. It thus appears that any claims Plaintiff intends to bring under the ADA regarding her suspension or prior WCS activity may be time-barred, and Plaintiff has failed to timely exhaust her administrative remedies for any such claims. *See id.*

Plaintiff asserts that she was unable to meet securely with an EEOC representative because of "internet hacking and privacy issues." Docket No. 16, p. 1 The EEOC representative sent Plaintiff a follow-up email stating, "you asked me for a confirmation number which I was not provided." *Id.* The representative offered to have Plaintiff call her back, or for Plaintiff to set up a new appointment; thus, it appears that Plaintiff ended the phone call when the representative could not provide a confirmation code. *Id.* The confirmation email Plaintiff received from the EEOC instructed Plaintiff to "have the password for [her] EEOC Public Portal user account" available but did not instruct Plaintiff to request a confirmation code or password from the EEOC representative. Docket No. 15, p. 28. This perception that Plaintiff's EEOC meeting was not legitimate and that someone was impersonating an EEOC officer does not excuse Plaintiff from the exhaustion requirement, nor does it extend Plaintiff's deadline for exhaustion of administrative remedies under the ADA. *See Perez v. Sturgis Public Schs.*, 3 F.4th 236, 242 (6th Cir. 2021) (Courts are "not to create exceptions to statutory exhaustion requirements") (citing *Ross v. Blake*, 578 U.S. 632 (2016)).

Although Plaintiff would ordinarily be able to re-file her claims after exhaustion of administrative remedies, "[f]ailure to timely exhaust administrative remedies is an appropriate

basis for dismissal" of an action under the ADA. *Williams*, 53 F. App'x at 351. Given the uncertainty in Plaintiff's alleged timeline of events and the lack of clarity as to what events Plaintiff specifically alleges demonstrate discrimination against her on the basis of a disability, it is not clear whether Plaintiff's ADA claims are entirely time-barred. Accordingly, the undersigned recommends that any ADA claim Plaintiff intended to bring concerning her suspension from WCS, or any earlier actions by Defendant, be DISMISSED for failure to timely exhaust administrative remedies. The undersigned further recommends that any ADA claim put forward by Plaintiff be DISMISSED WITHOUT PREJUDICE to re-filing after Plaintiff has exhausted her administrative remedies, to the extent that Plaintiff has any claims under the ADA which are not yet time-barred by the EEOC's deadline for filing a charge.

### G. State Law Claims

Finally, Defendant asserts that because all of Plaintiff's federal claims should be dismissed pursuant to Fed. R. Civ. P. 12, the Court should therefore decline to exercise supplemental jurisdiction over Plaintiff's state-law claims. Docket No. 6, p. 8. The Sixth Circuit has advised, "[w]hen all federal claims are dismissed before trial, the balance of considerations will usually point to dismissing the state law claims or remanding them to state court if the action was removed." *Musson Theatrical v. Federal Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996). As the undersigned recommends that all of Plaintiff's federal claims be dismissed, the undersigned accordingly recommends that Plaintiff's state law claims be DISMISSED WITHOUT PREJUDICE to filing in state court.

### CONCLUSION

For the foregoing reasons, the undersigned recommends that Plaintiff's federal claims under the Fourth Amendment, the Ninth Amendment, the Fourteenth Amendment, HIPAA, and

17

Case 3:22-cv-00496   Document 21   Filed 12/16/22   Page 17 of 18 PageID #: 356

FERPA be **DISMISSED**, and that Plaintiff's claim under the ADA be **DISMISSED WITHOUT PREJUDICE** to re-filing after Plaintiff has exhausted administrative remedies, to the extent that Plaintiff has claims that are not time-barred by EEOC deadlines. The undersigned accordingly recommends that the Plaintiff's state law claims be **DISMISSED WITHOUT PREJUDICE** to filing in state court.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See* Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); Fed. R. Civ. P. 72.

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**